Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KUNKEL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>AISERA, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Kunkel ("Plaintiff" or "Kunkel") brings this Class Action Complaint and Demand for Jury Trial against Defendant Aisera, Inc. ("Defendant" or "Aisera") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded calls to cellular telephone numbers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kunkel, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Michael Kunkel is a resident of Hartford, Connecticut.

2. Defendant Aisera is a Delaware registered company headquartered in Santa Clara, California. Defendant Aisera conducts business throughout the United States.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper since the Defendant resides in this District and made pre-recorded calls from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 3.7 billion robocalls were placed in October 2025 alone, at a rate of 120.6 million calls per day. www.robocallindex.com (last visited November 9, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Aisera operates an AI platform that uses AI-generated agents for different organizations.[3]

15. Defendant Aisera uses pre-recorded calls to reach businesses and consumers *en masse* to find businesses who are willing to uses its AI platform.

16. Defendant Aisera also places cold calls to consumers to generate business.

17. A current employee posted a job review on Glassdoor complaining about the need to place cold calls using an automated system to generate business:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/aisera/about/

Aisera
Engaged employer
Follow

Overview | 405 Reviews | -- Jobs | 457 Salaries | 57 Interviews | 57 Benefits | 2( Pho

**Cons**
Toxic work environment with every sales leader and C-level executive, ESPECIALLY the CEO, being the worst micromanagers I have ever worked with. The Account Executives are BDRs. We are required to get on video calls 3 hours per day while we do prospecting together on video to make sure it is being done while being required to fill out a daily prospecting sheet. Quota is 100 emails and 100 phone calls per day on their automated phone caller. EVERY AE I've talked to is looking for a new job with the average tenure of reps being short, they come in, see the toxic culture and start the interview process to get out ASAP. That's why they have you sign a document stating you'll reimburse the company for recruiters fees if you quit within one year. Two days in sales leadership required 50 calls and 50 emails a day and your entire rolodex of relationships to set appointments, while not being trained, and requiring a long non-compete. Do not make this huge career mistake unless you don't have a job and have to get one. But even then, know that you'll be required to do 5-7 hours of prospecting, cold-calling and spam emails, every single day while you're looking for your new job. [4]

18. As per the job review that is shown above, Aisera's account executives have their cold calling monitored and even placed in video calls with Aisera management, as the account executives are required to place 100 phone calls per day.

19. Former Aisera employees have also complained about having to engage in cold calling to generate business on Glassdoor, such as:

**Cons**
Every org has cons, and the 1star reviews are actually a pro because this isn't for everyone, you will have to cold call, you will have to work hard, and we're not the first or last company to expect that.

---

[4] https://www.glassdoor.co.in/Reviews/Aisera-Account-Executive-Reviews-EI_IE2270483.0,6_KO7,24.htm

20. Aisera lists cold calling as a requirement in its job postings for account executives and sales development representatives.

21. In job postings for an account executive, Aisera states:

- Effective in dealing with C-suite of mid market to enterprise organizations
- Experience with generating pipeline by cold calling and prospecting
- Understanding of sales process and move accounts through sales stages effectively

- Manage multiple customers simultaneously at various stages of the Aisera buying cycle
- Prospect cold leads to generate interest and new contacts to fill your funnel
- Research accounts, identify key players and build relationships [5]

22. In job postings for a sales development representative, Aisera states:

What You'll Need:

- Experience cold calling in a high-tech environment, preferred
- Effective combination of both selling skills and technical acumen
- Salesforce or CRM experience preferred
- Ability to quickly learn new concepts and technology
- Resilience to thrive in a start-up environment
- Excellent verbal, written, and analytical communication skills
- Experience in modern prospecting and account development techniques
- Ability to manage multiple programs and initiatives simultaneously with an attention to details [6]

23. A consumer posted a complaint online about an unsolicited pre-recorded call that they received from Aisera:

[5] https://app.welcometothejungle.com/jobs/lYioOS0g

[6] https://job-boards.greenhouse.io/aiserajobs/jobs/4677219004



[7]

24. The complaint that is shown above is based on 847-942-7644, the same phone number that Plaintiff was asked to call in a pre-recorded voicemail.

25. Companies that engage in automated cold calling use pre-recorded messages when they reach voicemails to save the employee time that would otherwise be associated with leaving live messages each time.

26. Neither Plaintiff nor the members of the proposed class ever consented to receive the telephone calls at issue.

27. In response to these calls, Plaintiff Kunkel brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

## PLAINTIFF KUNKEL'S ALLEGATIONS

28. Plaintiff Kunkel is the subscriber of the cell phone number ending in 1982.

29. On October 29, 2025 at 2:42 PM, Plaintiff Kunkel received an unsolicited call to his cell phone from 917-768-2142.

[7] https://lookup.robokiller.com/search?q=847-942-7644

30. This call was not answered, but a pre-recorded voicemail was left stating:

> "Hey, this is Alex Paul with Aisera following up on an email I sent you the other day and would love the chance to connect to discuss it further. Give me a call on my personal phone at 847-942-7644. Would love to hear from you."

31. Alex Paul's Linkedin profile shows that he is employed by Aisera as a business development representative:



[8]

32. The voicemail references an 847 number that Plaintiff Kunkel should call. Paul's phone number begins with 847:

[8] https://www.linkedin.com/in/alexcpaul/



[9]

33. Upon listening to the voicemail multiple times and based on the technical characteristics described herein, Plaintiff believes the voicemail is a pre-recorded voice message.

34. The voicemail begins with exactly 2-seconds of silence before the generic message plays. The message itself states nothing specific about Plaintiff or his alleged business and it makes reference to an email that Plaintiff Kunkel did not receive. The reference to a prior email is false and appears to be part of a generic, scripted message template.

35. In addition, the voicemail cuts-off immediately upon the conclusion of the last word of the message and there is no background sound in the voicemail.

36. Another indication that the call was placed used an automated system is that the caller display shows the phone number 917-768-2142, but Plaintiff is asked to call Kunkel directly at Kunkel's personal number - 847-942-7644. This

[9] https://www.datanyze.com/people/Alex-Paul/3801378915

discrepancy is characteristic of automated dialer systems that use pools of outbound calling numbers for placing calls, while directing callbacks to individual sales representatives' direct phone lines.

37. Plaintiff Kunkel has never done any business with Defendant Aisera or any of its related entities.

38. Plaintiff Kunkel did not provide his consent to Aisera to place pre-recorded calls to his cell phone.

39. Plaintiff Kunkel listened to the voicemail that was left by Aisera.

40. The unauthorized solicitation telephone call that Plaintiff received from Defendant, as alleged herein, has harmed Plaintiff Kunkel in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone’s hardware (including the phone’s battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Plaintiff Kunkel, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

42. Plaintiff Kunkel brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an

agent on Defendant's behalf) called on their cellular telephone number (2) using a pre-recorded voice message.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Kunkel anticipates the need to amend the Class definition following appropriate discovery.

44. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class because he received calls as part of the same campaign resulting in calls to other Class members.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant made calls using a pre-recorded voice to cellular telephone numbers without consent;

(b) whether Defendant's conduct constitutes a violation of the TCPA; and

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff Kunkel will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff Kunkel has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Kunkel and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kunkel nor his counsel have any interest adverse to the Class.

47. **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those

practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Kunkel Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kunkel and the Pre-recorded No Consent Class)**

48. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

49. Defendant Aisera transmitted unwanted solicitation telephone calls to Plaintiff Kunkel and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

50. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Kunkel and the other members of the Pre-recorded No Consent Class.

51. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Kunkel and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kunkel individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kunkel requests a jury trial.

**MICHAEL KUNKEL**, individually and on behalf of all others similarly situated,

DATED this 11th day of November, 2025.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4

Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*